**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

------------------------------------------------------------x
:
In re:                                                          :    Chapter 7
:
National Events Holdings, LLC, *et al.*,          :    Case No. 17-11556 (JLG)
:    (Jointly Administered)
Debtors.                                      :
:
:
------------------------------------------------------------x
:    Adversary No. 19-01180 (JLG)
:
Kenneth P. Silverman, Esq., the Chapter 7 Trustee   :
of the Jointly Administered Estates of National    :
Events Holdings, LLC, et al.,                       :
:
:
Plaintiff,                                  :
:
*v.*                                                            :
:
741 Dyslexington LLC,                             :
:
Defendant.                                 :
:
:
------------------------------------------------------------x
:
741 Dyslexington LLC,                             :
:
Third-Party Plaintiff,                     :
:
*v.*                                                            :
:
Edwin Ting,                                        :
:
Third-Party Defendant.                     :
:
:
------------------------------------------------------------x


**MEMORANDUM DECISION AND ORDER GRANTING**
**MOTION TO DISMISS THIRD-PARTY COMPLAINT**

**A P P E A R A N C E S :**

KASEN & KASEN, P.C.
*Attorneys for Third-Party Defendant Edwin Ting*
115 Broadway, 5th Floor
New York, New York 10006
By:   Michael J. Kasen

LAW OFFICES OF ISAAC NUTOVIC
*Counsel for 741 Dyslexington, LLC*
261 Madison Avenue, 26th Floor
New York, New York 10016
By:   Isaac Nutovic


**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**


### Introduction

Kenneth P. Silverman, Esq. is the Chapter 7 Trustee of the jointly administered estates of

National Events Holdings, LLC, National Event Company II, LLC, National Event Company III,

LLC, National Events Intermediate, LLC, World Events Group, LLC ("WEG"),[1] National Events

of America, Inc., and New World Events Group, Inc.[2] (collectively, the "Debtors").[3]  Jason Nissen

---

[1]   National Events Holdings, LLC, National Event Company II, LLC, National Event Company III, LLC, National Events Intermediate, LLC, and World Events Group, LLC are collectively referred to herein as the "LLC Debtors".

[2]   National Events of America, Inc., and New World Events Group, Inc., are collectively referred to herein as the "Corporate Debtors".

[3]   On June 5, 2017, the LLC Debtors commenced voluntary bankruptcy proceedings under chapter 11 of the Bankruptcy Code in this Court.  On June 28, 2017, the Corporate Debtors commenced voluntary chapter 11 bankruptcy proceedings.  On August 17, 2017, the Court entered an order converting each of the LLC Debtors' cases to cases under chapter 7 of the Bankruptcy Code.  *Order Converting the Debtors' Chapter 11 Bankruptcy Cases to Cases Under Chapter 7 Under the Bankruptcy Code*, Case No. 17-11556, ECF No. 143.  Thereafter, the Chapter 7 Trustee was appointed in each of those cases.  On February 11, 2019, the Court entered an order (a) providing for the agreed allocation and payment of certain claims, (b) converting the Corporate Debtors' cases to chapter 7 cases, (c) providing for the appointment of the Chapter 7 Trustee in the Corporate Debtor's cases, (d) directing the joint administration of all of the chapter 7 cases, and (e) granting related relief.  *Order (A) Providing for the Agreed Allocation and Payment of Certain Claims, (B) Converting the Corporate Debtors' Cases to Chapter 7 Cases, (C) Providing for the Appointment of the Trustee in the Corporate Debtors' Cases, (D) Directing Joint Administration of All of the Chapter 7 Cases, and (E) Granting Related Relief*, Case No. 17-11556, ECF No. 513.

("Nissen") is the Debtors' former Chief Executive Officer and/or Managing Member.  On May 31,

2017, he was arrested and charged by the Federal Bureau of Investigation with allegedly

defrauding victims of at least $75 million through a Ponzi scheme.  On March 28, 2018, Nissen

pleaded guilty to wire fraud in connection with the charges brought against him in federal court.

On May 30, 2019, the Chapter 7 Trustee filed a complaint (the "Trustee's Complaint")[4]

commencing this adversary proceeding against 741 Dyslexington LLC ("Dyslexington").  In it,

the Trustee seeks to avoid and to recover: transfers to Dyslexington totaling $144,000, evidenced

by three checks drawn on debtor WEG's bank account, as fraudulent transfers under New York

state law and pursuant to sections 544, 548, 550(a), and 551 of title 11 of the United States Code

(the "Bankruptcy Code"); and a transfer evidenced by an $11,500 check drawn on Nissen's

account, as a subsequent transferee of an alleged fraudulent transfer under section 550(a)(2) of the

Bankruptcy Code.  *See* Trustee's Complaint ¶ 10.

On July 15, 2022, Dyslexington, as third-party plaintiff, filed a complaint in this adversary

proceeding (the "Third-Party Complaint")[5] against Edwin Ting ("Ting"), as third-party defendant.

In it, Dyslexington seeks to hold Ting liable for any verdict or judgment that the Chapter 7 Trustee

may recover against it in this adversary proceeding.

---

[4]    *Complaint*, ECF No. 1.  Unless otherwise specified, references to "ECF No. __" are to documents filed on the electronic docket in this adversary proceeding, Adversary No. 19-1180.

[5]    *Third Party Complaint*, ECF No. 22.  In March 2022, Dyslexington moved to allow a third-party complaint against Ting, which Ting opposed.  *Defendant's Motion for Leave to File Third-Party Complaint*, ECF No. 15; *Objection of Edwin Ting, Proposed Third-Party Defendant, to Defendant, 741 Dyslexington LLC's Motion for Leave to File Third-Party Complaint*, ECF No. 16.  The Court granted that motion, and Dyslexington filed its third-party complaint against Ting, seeking to avoid and to recover certain allegedly fraudulent transfers.  *See Order Authorizing Filing of Third Party Complaint*, ECF No. 21.

The matter before the Court is Ting's motion to dismiss the Third-Party Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (the "Federal Rules").[6] As support for the motion (the "Motion"),[7] Ting contends that that the Court lacks subject-matter jurisdiction over the matters at issue in the Third-Party Complaint (Rule 12(b)(1)), and, alternatively, that the Third-Party Complaint fails to state a claim for relief against Ting (Rule 12(b)(6)). Dyslexington opposes the Motion (the "Opposition").[8] The Court heard argument on the Motion.

For the reasons set forth below, the Court finds that it lacks subject-matter jurisdiction to adjudicate the matters at issue in the Third-Party Complaint. Accordingly, the Court dismisses the Third-Party Complaint, with prejudice. The Court need not, and does not, consider Ting's request for relief under Rule 12(b)(6).

### Background

On or about August 8, 2012, Dyslexington and Ting entered into a lease agreement (the "Penthouse Lease"), pursuant to which he leased the penthouse apartment at 147 Lexington Avenue, New York, New York, 10016 (the "Building"). Third-Party Complaint ¶ 5.[9] On or about November 21, 2012, Ting executed a guaranty of payment for another tenant's obligations under the lease of another apartment in the Building (with the Penthouse Lease, the "Leases").

---

[6] Rule 12(b) is made applicable in bankruptcy proceedings by Bankruptcy Rule 7012. *See* Fed. R. Bankr. P. 7012(b).

[7] *Third Party Defendant, Edwin Ting's Motion to Dismiss Third-Party Complaint*, ECF No. 24.

[8] *Memorandum of Law in Opposition to Third-Party Defendant Edwin Ting's Motion to Dismiss the Third-Party Complaint*, ECF No. 33.

[9] "The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-cv-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* (quoting *Hailey v. Connecticut*, No. 10-cv-1787, 2011 WL 6209748, at *2 (D. Conn. Dec. 14, 2011)). Accordingly, in resolving the Motion, the Court assumes the truth of the facts alleged in support of the Third Party Complaint.

Third-Party Complaint ¶¶ 6–7.  Prior to the commencement of WEG's bankruptcy case, Ting

arranged for payments to be made to Dyslexington against amounts due under the Leases.

Third-Party Complaint ¶ 9.

Dyslexington asserts that, in purporting to meet his obligations under the Leases, Ting

tendered it three checks drawn on WEG's account, aggregating $144,500, and a check for $11,500

drawn on Jason Nissen's account (collectively, the "Ting Payments").  Those are the checks at

issue in the Trustee's Complaint.  The Chapter 7 Trustee has separately sued Ting to avoid and to

recover alleged fraudulent transfers aggregating $566,714 (including transfers represented by the

checks comprising the Ting Payments).[10]

The Third-Party Complaint contains two counts.  In support of Count I, Dyslexington

contends that pursuant to paragraph 10 of both Leases, Ting agreed to defend and indemnify it,

and that if it sustains any damages as alleged in the Trustee's Complaint, it is entitled to contractual

indemnification from, and to have judgment over and against, Ting for any verdict or judgment

that the Chapter 7 Trustee may recover against it.  Third-Party Complaint ¶¶ 15–18.  In support of

Count II, Dyslexington asserts that at all times, it fulfilled its obligations under the Leases and

Ting paid his rental obligations under the Leases with funds which he implicitly represented to

Dyslexington were good and lawful tender that it could retain.  Dyslexington contends that if it

sustains damages as alleged in the Trustee's Complaint, it is entitled to judgment over and against

Ting for common-law indemnification of any verdict or judgment that the Chapter 7 Trustee may

recover against it.  *Id.* ¶¶ 19–24.

---

[10]   *See* Complaint, *Silverman v. Ting*, AP No. 19-1159, ECF No. 1.

**Motion To Dismiss**

In support of the Third-Party Complaint, Dyslexington alleges that the Court has subject-matter jurisdiction over the complaint pursuant to 28 U.S.C. § 1332 because the action is between citizens and residents of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs, as well as pursuant to 28 U.S.C. § 1334(b) because the matters at issue in the complaint fall within the Court's "related to" jurisdiction.  Third-Party Complaint ¶ 4.

Ting contends that the Court must dismiss the Third-Party Complaint pursuant to Rule 12(b)(1) because the Court does not have subject-matter jurisdiction over the complaint. Motion at 3.  He also asserts that the Third-Party Complaint "demands Judgment against [Ting] in the amount recovered by [the Chapter 7 Trustee]," Complaint at 5, but it is unclear on what theory Dyslexington alleges it is entitled to such relief.  Motion at 3.  As such, Ting maintains that the Court must dismiss the Third-Party Complaint pursuant to Rule 12(b)(6) because it fails to sufficiently state a claim upon which relief can be granted.  *Id.*

Dyslexington opposes the Motion.  It asserts that Ting is not entitled to relief under Rule 12(b)(1) because there are two grounds upon which the Court can exercise jurisdiction over the Third-Party Complaint.  First, it maintains that the Court can exercise non-core "related to" jurisdiction over the complaint.  It says that Ting concedes "that this Court will have jurisdiction pursuant to 28 U.S.C. § 1334(b) if the outcome of this litigation 'in any way impacts upon the handling and administration of the bankruptcy estate.'"  Opposition at 2 (quoting Motion at 6). Dyslexington argues that, if the Trustee prevails against Dyslexington in this adversary proceeding, and if Dyslexington also prevails on either of its indemnification claims against Ting, then the Trustee will have another collection source in the event that the Trustee cannot fully recover from Dyslexington.  *Id.* at 3.  It says that contingency would affect the availability of estate

6

property, and therefore it lends to the Court's "related to" jurisdiction. *Id.* at 4. Second, at the hearing on the Motion, Dyslexington argued that the Court can exercise supplemental jurisdiction over the Third-Party Complaint.[11] Dyslexington also contends that there is no basis to dismiss the complaint under Rule 12(b)(6) because the complaint states a claim for relief against Ting. *Id.* at 4–6.

### Applicable Legal Standards

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A court must view the complaint liberally and accept as true all material facts alleged in the complaint when considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *In re Ener1, Inc.*, 558 B.R. 91, 94 (Bankr. S.D.N.Y. 2016). In considering subject matter jurisdiction under Rule 12(b)(1), a court may refer to evidence outside the pleadings. *Rosen v. Chowaiki & Co. Fine Art (In re Chowaiki & Co. Fine Art Ltd.)*, 593 B.R. 699, 711 (Bankr. S.D.N.Y. 2018) (citing *Makarova*, 201 F.3d at 113; *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.")).

---

[11]    Although Dyslexington did not make that argument in its Opposition to the Motion, it is not a new argument. Earlier in this case, Dyslexington moved for leave to file its third-party complaint against Ting, which Ting opposed, and which the Court ultimately granted. *Defendant's Motion for Leave to File Third-Party Complaint*, ECF No. 15; *Objection of Edwin Ting, Proposed Third-Party Defendant, to Defendant, 741 Dyslexington LLC's Motion for Leave to File Third-Party Complaint*, ECF No. 16; *Order Authorizing Filing of Third Party Complaint*, ECF No. 21. Dyslexington first made its supplemental-jurisdiction argument in its reply to Ting's opposition to the motion to authorize a third-party complaint, and in granting the motion, the Court did not reach that argument. *Defendant's Response to Edwin Ting's Objection to Motion for Leave to File Third-Party Complaint*, ECF No. 20. In any event, at the hearing on the Motion, Ting did not object to the Court's consideration of the argument.

Rule 12(b)(6) focuses on the adequacy of the pleading.  It "tests the sufficiency of the allegations in support of a complaint in light of the pleading requirements in Rule 8 of the Federal Rules of Civil Procedure."  *O'Connor v. DL-DW Holdings, L.L.C. (In re Extended Stay, Inc.)*, No. 09-13764, 2020 WL 10762310, at *5 (Bankr. S.D.N.Y. Aug. 8, 2020).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must show that the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In assessing the merits of a Rule 12(b)(6) motion, the Court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  *Id.*; *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323 (2007).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Thus, a "pleading that offers labels and conclusions or a formulaic recitation of a cause of action will not do."  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555).

## Discussion

In assessing the merits of the Motion, the Court first considers whether it has subject-matter jurisdiction over the Third-Party Complaint.  In doing so, the Court reviews the scope of any diversity jurisdiction, bankruptcy jurisdiction, or supplemental jurisdiction that it may exercise over the complaint.

### Diversity Jurisdiction

Section 1332 of title 28 of the United States Code delimits federal district courts' diversity jurisdiction.  As relevant, a district court may exercise diversity jurisdiction over a case where the

amount in controversy exceeds $75,000 and where the case is between "citizens of different

States." 28 U.S.C. § 1332(a)(1). However, that statute does not extend diversity jurisdiction to

bankruptcy courts. *See generally Merhav Ampal Grp., Ltd. v. Merhav (M.N.F.) Ltd. (In re*

*Ampal-Am. Isr. Corp.)*, No. 14-2385, 2015 WL 5176395, at \*6–7 (Bankr. S.D.N.Y. Sept. 2, 2015)

(discussing the circumstances under which bankruptcy courts have subject-matter jurisdiction).

Instead, section 157 of title 28 allows a district court to "provide that any or all cases under

title 11 and any or all proceedings arising under title 11 or arising in or related to a case under

title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157; *see Randall*

*& Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 586–87 & n.29 (5th Cir. 1999) (discussing

the limits of bankruptcy courts' jurisdiction where a case brought in a district court under § 1332

diversity jurisdiction had been referred to the bankruptcy court pursuant to § 157, which was not

clear error since the case met the test for § 1334 "related to" jurisdiction). Such relation to title 11

is the *sine qua non* of bankruptcy courts' jurisdiction—satisfaction of the section 1332 diversity

and amount-in-controversy requirements is not a sufficient basis for a bankruptcy court to exercise

jurisdiction over a case. *See* Judge Leif M. Clark, Survey Article, *Bankruptcy*, 32 Tex. Tech. L.

Rev. 667, 669 n.23 (2001) ("If the matter arises under . . . federal diversity jurisdiction, the district

court cannot refer it to a bankruptcy court."). The Court rejects Dyslexington's assertion that it

can exercise diversity jurisdiction over the Third-Party Complaint. *In re Canion*, 196 F.3d at 586–

87 & n.29.

Bankruptcy Jurisdiction

Section 1334 of title 28 grants jurisdiction over bankruptcy cases and proceedings to the

district court. Section 1334(a) grants the district court original jurisdiction over all bankruptcy

cases, and section 1334(b) grants it original but non-exclusive jurisdiction over all civil

proceedings arising under title 11 or arising in or related to cases under title 11.  28 U.S.C. § 1334(a)–(b).  Section 157 permits the district court to refer all cases and proceedings within its bankruptcy jurisdiction to the bankruptcy court.  28 U.S.C. § 157(a).  As noted, the United States District Court for the Southern District of New York has done so pursuant to the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.).

Section 157 divides proceedings into "core" and "non-core."  "[C]ore proceedings are those that arise in a bankruptcy case or under Title 11."  *Stern v. Marshall*, 564 U.S. 462, 476 (2011). "Claims 'arise in' bankruptcy when, although not based on any right expressly created by Title 11, they 'would have no practical existence but for the bankruptcy.'"  *Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013) (quoting *In re Casual Male Corp.*, 317 B.R. 472, 476 (Bankr. S.D.N.Y. 2004)).  Proceedings "arising under" the Bankruptcy Code are those "that clearly invoke substantive rights created by federal bankruptcy law."  *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006).  Non-core proceedings are synonymous with "related to" proceedings.  *Stern*, 564 U.S. at 476.  "[A] civil proceeding is 'related to' a title 11 case if the action's 'outcome might have any "conceivable effect" on the bankrupt estate.'"  *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (quoting *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992)).  "While 'related to' jurisdiction is not 'limitless,' it is fairly capacious, and includes 'suits between third parties which have an effect on the bankruptcy estate.'"  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08 & n.5 (1995)).  "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way

10

impacts upon the handling and administration of the bankrupt estate." *Celotex*, 514 U.S. at 308 n.6.

The dispute between non-debtors Dyslexington and Ting over the enforcement of Dyslexington's alleged right to indemnification from Ting at issue in the Third-Party Complaint is not a core proceeding because it does not directly involve any of the bankruptcy estates and does not arise under title 11 or in case under title 11. *See Shea & Gould v. Red Apple Cos. (In re Shea & Gould)*, 198 B.R. 861, 865–66 (Bankr. S.D.N.Y. 1996) ("The relevant inquiry in determining whether a proceeding is a core proceeding 'is whether the nature of the adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power.'" (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389 (2d Cir. 1990))).  Dyslexington does not contend otherwise.

However, it asserts that the Court has "related to" jurisdiction over the Third-Party Complaint because the outcome of that litigation could have a "conceivable effect" on the debtor's estate, as "it may affect the debtor's rights or the administration of the estate."  Opposition at 3 (quoting *Ritchie Cap. Mgmt, L.L.C. v. BMO Harris Bank, N.A.*, No. 14-cv-1936, 2015 WL 1433320, at *5 (S.D.N.Y. Mar. 30, 2015)).  Specifically, Dyslexington reasons that if the Chapter 7 Trustee prevails against it, and if it prevails on either of its indemnification claims against Ting, then the Chapter 7 Trustee will have an additional source of collection in the event Dyslexington does not pay its judgment. *Id.*  In other words, Dyslexington contends that the Court has "related to" jurisdiction over the Third-Party Complaint because it could enhance the estate's asset pool available to creditors.[12]

---

[12]   It is settled that bankruptcy courts will exercise "related to" jurisdiction over disputes between non-debtors where a non-debtor defendant asserts a contractual or statutory right to indemnification against a debtor.  Courts have

11

It is well established that "a proceeding involving non-debtors will not be found to be related solely on the ground that it will affect a distribution to creditors unless the proceeding involves property in which the debtor has a legally cognizable interest." *Holland Indus., Inc. v. United States (In re Holland Indus., Inc.)*, 103 B.R. 461, 469 (Bankr. S.D.N.Y. 1989); *see Spinner Fam. Holdings, LLC. v. GRG Chubb1 LLC (In re Garces Rest. Grp., Inc.)*, No. 18-1507, 2019 WL 3002932, at *4 (Bankr. D.N.J. July 9, 2019) ("Thus, 'a proceeding involving non-debtors will not be found to be related . . . unless the proceeding involves property in which the debtor has a legally cognizable interest.'" (quoting *Industrias Vassallo, Inc. v. P.R. Elec. Power Auth. (In re Industrias Vassallo, Inc.)*, No. 08-7752, 2015 WL 4626763, at *4 (Bankr. D.P.R. July 31, 2015))); *see also Neill v. Borreson (In re John Peterson Motors, Inc.)*, 56 B.R. 588, 596 (Bankr. D. Minn. 1986) ("The dispute in question involves two non-debtors, in no way implicates property of the bankruptcy estate, and thus falls outside of the statutory jurisdictional grant of 28 U.S.C. § 1334 and is outside the ambit of 28 U.S.C. § 157(a) reference to bankruptcy judges."); *Barber v. Riverside Int'l Trucks (In re Pearson Indus.)*, 142 B.R. 831, 849–50 (Bankr. C.D. Ill. 1992) ("[W]here such cross-claims or third-party complaints involve a dispute between non-debtors

---

reasoned that the indemnity claim could potentially affect the debtors' liabilities and thereby impact the handling and administration of the bankrupt estate. *See Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 516 (Bankr. S.D.N.Y. 1999) ("In litigation involving non-debtors, 'relatedness' often turns on the estate's obligation to indemnify the losing party. Where the obligation to indemnify is contractual and absolute, the third-party litigation is 'related to' the bankruptcy case."); *see also In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 318 (S.D.N.Y. 2003) ("In determining whether potential claims by third party defendants against the debtor for either indemnification or contribution give rise to 'related to' jurisdiction over litigation to which the debtor is not a party, courts in this circuit . . . have generally found jurisdiction where there is a 'reasonable' legal basis for the claim."); *IIG Cap. LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574, 580 (Bankr. S.D.N.Y. 2005) ("Many cases have held that a bankruptcy court has 'related to' jurisdiction over non-debtor litigation if the estate is obligated to indemnify or contribute to the losing party."). Where the obligation to indemnify is contractual and absolute, the third-party litigation is related to the bankruptcy case. *See Hunnitcutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.)*, 190 B.R. 157, 160–61 (S.D.N.Y. 1995) (holding that "related to" jurisdiction existed over claims against a third-party defendant where the third-party defendant had an indemnification agreement with the debtor). Ting's alleged obligation to indemnify Dyslexington for its losses is not a predicate for finding "related to" jurisdiction. The indemnification provisions in the Leases impose no obligation on any Debtor entity. Ting acknowledges that the indemnification provisions in the Leases apply only to him, a non-Debtor.

which will merely determine which party will ultimately be responsible in the event that one of

the nondebtors is found liable in the underlying adversary proceeding, jurisdiction is lacking."

(citing *Official Creditor's Comm. of Prods. Liab. & Personal Injury Claimants v. Int'l Ins. Co. (In

re Pettibone Corp.)*, 135 B.R. 847 (Bankr. N.D. Ill. 1992))).  The Debtor has no legally cognizable

interest in the Third-Party Complaint.  Any judgment awarded to Dyslexington on the complaint

will direct Ting to pay damages directly to Dyslexington, not to the Chapter 7 Trustee.  The

proceeds of the litigation, if any, will not constitute estate property, and the resolution of that action

will not affect the property available for distribution to the creditors of a bankruptcy estate or the

allocation of property among such creditors.[13]  Dyslexington has not met its burden of proving that

the Court has bankruptcy jurisdiction over the Third-Party Complaint.

Supplemental Jurisdiction

In accordance with 28 U.S.C. § 1367(a), "in any civil action of which the district courts

have original jurisdiction, district courts shall have supplemental jurisdiction over all other claims

---

[13]    The cases that Dyslexington cites are not to the contrary and do not support its thesis.  In two of the three cases
on which Dyslexington relies, the defendant had a direct relationship with the debtor. *See Geron v. Schulman (In re
Manshul Constr. Corp.)*, 225 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (distinguishing that case, which involved
fraudulent-transfer claims brought by the trustee directly against defendants, from cases where "the proceeds were
payable to creditors, not the debtor"); *Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695, 702–03 (Bankr. S.D.N.Y. 1989)
(observing that, because the debtor and his wholly owned corporations were the plaintiffs in this action, and funding
of the plan was contingent on the outcome of that litigation, it was "not a case where a nondebtor's action *against* the
debtor's wholly owned corporation will have no [effect] upon the debtor's rights or on the payments to creditors").  In
particular, *Kolinsky* was specifically distinguished by *In re Holland Indus.*, which explicitly held that "a proceeding
involving non-debtors will not be found to be related solely on the ground that it will affect a distribution to creditors
unless that proceeding also involves property in which the debtor has a legally cognizable interest."  *In re Holland
Indus., Inc.*, 103 B.R. at 469.  The third case Dyslexington cites cuts directly against its argument.  *McMillan v.
Barclays Bank PLC*, No. 13-cv-1095, 2014 WL 4364053, at *3–4 (S.D.N.Y. Sept. 3, 2014) (holding that the court
lacked "related to" jurisdiction over a case brought by the plaintiff against a non-debtor bank and several former
officers of the debtor law firm over alleged misconduct by those officers in obtaining a loan for which the plaintiff
was liable, reasoning that even though the officers "may have an indemnification claim against the bankrupt estate. . . .
there is at least some dispute whether the [officers] would be automatically entitled to indemnification").  Accordingly,
this case is clearly outside the Court's related to jurisdiction.  *See In re Amanat*, 338 B.R. at 581 ("Although cases
have found certain proceedings to be core based on their overall impact on the estate, . . . there is no authority that a
party with a contingent claim for indemnification can bootstrap its claim onto the Bankruptcy Court's core
jurisdiction.").

13

that are so related to claims in the action within such original jurisdiction that they form part of the

same case or controversy under Article III of the United States Constitution."  Moreover, claims

are "'part of the same case or controversy' when they 'derive from a common nucleus of operative

fact,'" and are such that the claimant would ordinarily be expected to try them all in one judicial

proceeding.  *Picard v. HSBC Bank PLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 561 B.R. 334,

348 (Bankr. S.D.N.Y. 2016) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328,

335 (2d Cir. 2006)).  "A court that has supplemental jurisdiction may nevertheless decline in its

discretion to exercise it."  *Id.* (citing 28 U.S.C. § 1367(c)).

The Second Circuit has upheld the exercise of supplemental jurisdiction by bankruptcy

courts.  *See Am. Residential Equities, LLC v. GMAC Mortg. LLC (In re Residential Cap., LLC)*,

No. 12-1934, 2013 Bankr. LEXIS 3045, at *13 n.3 (Bankr. S.D.N.Y. July 30, 2013) (citing *Klein*

*v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir. 1994)); *Gowan v. HSBC*

*Mortg. Corp. (USA) (In re Dreier LLP)*, No. 10-5456, 2012 WL 4867376, at *5 (Bankr. S.D.N.Y.

Oct. 12, 2012) ("*Dreier*") ("[T]he Second Circuit has ruled that a bankruptcy court may acquire

jurisdiction over a dispute between third parties under the principles of supplemental jurisdiction."

(citing *In re Lionel Corp.*, 29 F.3d at 92)).

In *Dreier*, this Court considered the application of supplemental jurisdiction in an

analogous circumstance.  There, the chapter 11 trustee filed an adversary proceeding against the

sellers of an apartment and against a mortgage servicer to avoid and recover a payment the debtor

had made to the servicer at the direction of the sellers.  *Dreier*, 2012 WL 4867376, at *1.  The

mortgage servicer filed cross-claims for contribution and/or indemnity from the sellers, which the

sellers moved to dismiss.  *Id.*  As a matter of law, "the Court [was] constrained to conclude it may

exercise supplemental jurisdiction over the cross-claims asserted by [the servicer] against [the

14

sellers] because they are so related to the Trustee's core claim against" both parties that they

formed part of the same case or controversy. *Id.* at \*5. Nonetheless, the court declined to exercise

supplemental jurisdiction over the cross-claims because "they raise[d] complex and undecided

issues under New York law." *Id.* It cited to a commentator who "has concluded that a fraudulent

transferee's right to contribution or indemnity under New York law is doubtful." *Id.* (citing

Edward M. Fox & James Gadsden, *Rights of Indemnification and Contribution Among Persons*

*Liable for Fraudulent Conveyances*, 23 SETON HALL L. REV. 1600, 1605–11 (1993)). As an

additional basis, the court suggested that the servicer may have had the right to enforce the sellers'

original obligation to the extent it was compelled to pay the trustee, since it otherwise had a

contractual right to receive payment from the sellers. *Id.*

Crucially, the bankruptcy court in *Dreier* also relied on a third ground for its decision not

to exercise supplemental jurisdiction. *Id.* at 6. The sellers allocated part of the proceeds from the

sale of their apartment to the mortgage servicer, which satisfied their note and mortgage, "but

because of the source of those proceeds, [the servicer] may have to return the payments." *Id.* The

court observed, "This result raises a question that New York law does not appear to answer: where

an obligor uses fraudulently transferred funds to satisfy its own obligation, and its obligee must

thereafter restore the transferred funds to the transferor's trustee, is the obligor's debt reinstated?"

*Id.* Because of the "unsettled nature of New York law on this point," the Court determined that it

should not exercise supplemental jurisdiction over this question. *Id.*

Here, the posture of the case is similar. Two defendants in adversary proceedings (albeit

not co-defendants in the same proceeding) are defendants against a trustee for recovery of an

identical set of payments—here, the Ting Payments. Similar to *Dreier*, one of the defendants now

attempts to assert indemnification claims against a non-debtor defendant. The grounds relied on

15

in *Dreier* are also present here.  First, it is unclear in this case what common-law right for

indemnification Dyslexington might have against Ting—as in *Dreier*, neither party has supplied

precedent on this point.  *See id.* at *5.  Second, Dyslexington may indeed have the right to enforce

the original contract against Ting, since Ting's obligation to pay Dyslexington may conceivably

endure if the Ting Payments' potentially fraudulent nature means that they did not fulfill the

contract.  *See id.*  Third, and most importantly, research reflects that New York law is still unsettled

as to whether the recovery of fraudulently transferred funds from an obligee reinstates the debt of

an obligor.  *Id.* at *6.  Thus, consistent with *Dreier*, the Court finds that even if the factual

circumstances here were sufficient to enable it to exercise supplemental jurisdiction over the

third-party claims, it would not be appropriate to rule on these complex questions without the

benefit of New York courts' prior consideration of them.  Therefore, to the extent that the Court

may avail itself of supplemental jurisdiction, it declines to do so.

## Conclusion

Based on the foregoing, the Court dismisses the Third-Party Complaint, with prejudice, for

lack of jurisdiction.  In light of this holding, the Court does not reach the merits of Ting's

Rule 12(b)(6) argument.

IT IS SO ORDERED.


Dated: New York, New York
       July 26, 2023


/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge